UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
_____

AMADO BRITO,

                       Petitioner,      **REPORT AND**
                                         **RECOMMENDATION**
       - against -

                                         **04 Civ. 1815 (LTS) (RLE)**

JOHN J. BURGE,

                      Respondent.
_____

**To the HONORABLE LAURA TAYLOR SWAIN, U.S.D.J.:**

## I.  INTRODUCTION

*Pro se* petitioner, Amado Brito ("Brito"), a New York state prisoner at Shawangunk

Correctional Facility, filed a writ of habeas corpus pursuant to 28 U.S.C. § 2254 on March 29,

2004.  Brito pled guilty to third-degree criminal possession of a weapon (N.Y. PENAL LAW

§ 265.02(4) (2006)), and was sentenced to seven years' imprisonment.  Brito contends that his

incarceration violates the United States Constitution in that: 1) the government did not acquire

the requisite jurisdiction over him; 2) the evidence was obtained wrongfully; 3) his bail and

detention were unreasonable under the Eighth Amendment; 4) there were various violations of

the Sixth Amendment during arraignment and grand jury proceedings; 5) both his trial and

appellate counsel were constitutionally ineffective; 6) his guilty plea was coerced; and 7) he was

deprived of the right to due process of law.  Petition under 28 U.S.C. § 2254 ("Pet.") ¶ 13.  For

the reasons set forth below, I recommend that the petition be **DENIED**.

## II.  BACKGROUND

**A.**    **Factual Background**

On June 19, 1999, police responded to a call from Johanne Francisco, who reported that a

gunshot had been fired through her living room window.  Declaration in Opposition to Petition for a Writ of Habeas Corpus ("Opp'n Decl."), Danielle L. Attias, October 4, 2004, Exh. A at 2. Based on the trajectory, the police determined that the gunshot had been fired from Brito's apartment, and went to the apartment that day.  **Id**.  The next day, Brito admitted that his son had fired the gunshot, and led a detective to a storage room, where he had placed the gun.  Opp'n Decl., Exh. H ¶ 3.  A nine millimeter pistol, a shotgun, and ammunition were recovered.  **Id**. Brito was subsequently arrested.  **Id**. ¶ 4.

On July 14, 1999, Brito was charged with third and fourth degree criminal possession of a weapon, and tampering with physical evidence.  Memorandum of Law in Opposition to Petition for a Writ of Habeas Corpus ("Opp'n Mem."), at 2.  Brito's counsel, Richard Stoll ("Stoll"), moved to dismiss the charges, and to suppress the evidence and statements Brito had made to the police.  Opp'n Decl., Exh. O.  In response to the motion to suppress, Judge Carol Berkman ordered a **Huntley** [**People v. Huntley**, 255 N.Y.S.2d 838 (1965)] hearing.  Opp'n Decl., Exh. H ¶ 5.  Brito appeared for the **Huntley** hearing on November 15.  **Id**. ¶ 6.  He was dissatisfied with Stoll's representation, and retained Steven Questore ("Questore"), who proceeded as his counsel that day.  Transcript, November 15, 1999 ("Tr.") at 2-6.  Before the start of the actual hearing, however, the State offered Brito a plea bargain.  **Id**. at 12-13.  He would plead guilty to third-degree possession of a weapon, but would be permitted to withdraw the plea during sentencing, and plead guilty to attempted possession of a weapon in the third-degree.  **Id**.  He would be sentenced to three years' incarceration.  **Id**.

Questore told the court he discussed the plea "at length" with Brito, and that Brito would agree to it.  **Id**.  Questore requested, and received, a Spanish interpreter, because he believed it

would make the plea go "more smoothly." **Id**. at 13.  Judge Berkman proceeded to question Brito about the gunshot incident.  Brito stated that he did not speak with the authorities when they first visited his apartment, claiming that he was asleep when the police got there.  **Id**. at 17. After they left, he spoke with his son, who admitted firing the shot, and then he retrieved the weapon and placed it in a storage room within the apartment building.  **Id**.  The detectives questioned him the next day.

Brito then changed his account of the events, telling Judge Berkman that he did speak to the police on the first visit.  **Id**. at 19.  He spoke to his son after the police first visited and his daughter told him to "check" his son.  **Id**. at 20-21.  He testified that he told the detectives during the second visit he had the gun, and took them to the storage room.  **Id**. at 19.  In response to Judge Berkman's questioning, Brito admitted that he told detectives he had the gun only after his wife "told the truth." **Id**. at 23.  He said that he initially "lied" during the second visit "because [he] did not want [his] son to get into trouble." **Id**. at 24.

After Judge Berkman explained the rights he would forego by pleading guilty, Brito stated he was "not guilty." **Id**. at 26.  Judge Berkman then gave Questore more time to speak with Brito.  **Id**. at 26-27.  When the parties returned, the following exchange took place:

> MR. QUESTORE: We are ready to procedure [sic].
> THE COURT: Ready to proceed with what?
> MR. QUESTORE: With the plea.
> THE COURT: Mr. Brito, before we second called the case, we were talking about whether you wanted to plead guilty or whether you wanted to have a jury decide these issues, transitory possession, temporary possession or the - - whether or not you were in your home or place of business with this gun.  You remember that, sir?
> THE DEFENDANT: Yes.
> THE COURT: And the question then was whether you wanted to plead guilty or whether you wanted to go to trial.  Which one is it, sir?

3

THE DEFENDANT: I'm guilty.  All right?  I'm guilty.

THE COURT: So, you want to plead guilty?  You don't want to go to the jury with these issues or any other issues, sir?

THE DEFENDANT: Yeah.

THE COURT: Sir, you have the absolute right, for whatever the reason, to go to trial. You can have a jury trial, confront the witnesses against you and have your attorney cross-examine the witnesses.  You could bring in evidence in your own behalf.  You also have the right to remain silent, not to say anything.  If you plead guilty in this case, you give up those rights.  Do you understand that?

THE DEFENDANT: Yes.  I understand.  But, I think, you know - - I guilty.  So, I don't have no defense.  That's it.

THE COURT: All right.  I wasn't suggesting what you should do, Mr. Brito.  I just want to make sure you understand what your rights are, what you're giving up if you plead guilty.  Do you understand?

THE DEFENDANT: Yes.  I understand.

**Id**. at 27-29.

Because he had a previous felony conviction, Brito was eligible for sentencing as a predicate felony offender, and could receive up to seven years for pleading guilty to third-degree criminal possession of a weapon.  **Id**. at 29-30.  However, Judge Berkman told Brito that if he returned for sentencing, cooperated with authorities, and "stay[ed] out of trouble," he could withdraw the guilty plea to third-degree weapon possession, enter a guilty plea to attempted third-degree criminal possession of a weapon, and receive a three-year sentence.  **Id**. at 30.  Brito was warned that if he did not adhere to the conditions, he faced up to seven years' incarceration and would be unable to withdraw his guilty plea.  **Id**.  As the proceedings continued, Brito made somewhat confusing comments:

THE COURT: Other than what I've told you, have any other promises been made to you to get you to take this plea?

THE DEFENDANT: (In English) Uhm, I told my lawyer, you know, also about they no  told me - - nobody told me, you know, to guilty or something like that.  I don't want trouble, so I don't want trouble.  But, now I think, you know, that I had trouble.  So, I never do nothing.

THE COURT: I'm sorry.  Mr. Brito, perhaps you could say that to the interpreter.  I

4

really did not understand what you just said.
THE DEFENDANT: (In English) All right.  Yeah.
THE COURT: Please. Through the interpreter.  I don't want to deprive you of the
    right to say whatever you want to say.
THE DEFENDANT: No one has told me to take a plea.
THE COURT: That is your decision, sir, to take the plea?
THE DEFENDANT: Yes.
THE COURT: Is that all you wanted to tell me, that it was your decision, or was there
    something else?
THE DEFENDANT: Yes.

**Id**. at 31-32.

Judge Berkman then asked Brito whether he was now pleading guilty to third-degree

criminal possession of a weapon.  **Id**. at 32-33.  Questore spoke with Brito briefly and then stated

that Brito "was under the impression that the Court is suggesting or advising him that he plead

guilty."  **Id**.  Though Questore told Brito that the court was not advising him in any way, he

asked Judge Berkman to also explain this to Brito.  **Id**. at 33.  Judge Berkman did not address

that point, but instead asked Brito again whether he was pleading guilty.  **Id**.  Brito responded:

"Yes. Yes."  **Id**.  Brito then pled guilty to third-degree criminal possession of a weapon.  **Id**.

Brito was scheduled to return for sentencing on January 19, 2000, but failed to appear.

**Id**.  An arrest warrant was issued, and, on February 14, 2001, Brito was returned to court on the

warrant.  Opp'n Mem. at 5.  After his arrest, he said that he believed his sentencing date was

scheduled for December 15, 2000, and did not appear then because of work.  Sentencing

Transcript, February 14, 2001 ("S. Tr.") at 3-4.  When Brito did appear before Judge Berkman on

February 14, he asked to withdraw his guilty plea, claiming he was coerced into it by defense

counsel.  **Id**. at 2-3.  Judge Berkman denied the request, stating that Brito was not forced to take

the plea, and had a tendency to blame others for his faults.  **Id**. at 4-5.  Citing his criminal history

and his "serious bench warrant history," she sentenced him to seven years' incarceration.  **Id**. at 8-10.

## B.     Procedural Background

### 1.     Direct Appeal

On appeal, Brito, then represented by Robert Dean ("Dean"), claimed his sentence was excessive.  Opp'n Decl., Exh. A at 7.  The Appellate Division affirmed the conviction without opinion on December 4, 2001.  **People v. Brito**, 733 N.Y.S.2d 673 (App. Div. 1st Dep't 2001). Leave to appeal to the Court of Appeals was denied on March 29, 2002.  **People v. Brito**, 97 N.Y.2d 751 (2002).

### 2.     Criminal Procedure Law § 440.10 - Motion to Vacate Judgment

Brito filed a motion to vacate the judgment with the trial court.  He claimed that Stoll was ineffective because he: 1) improperly waived Brito's right to appear and testify before a grand jury; 2) allowed Brito to plead guilty to charges based on evidence that was obtained without a search or arrest warrant; and, 3) filed an inappropriate suppression motion.  Opp'n Decl., Exh. G at 9, 13-14.  Judge Berkman denied the motion on April 28, 2003, finding that Stoll's performance was effective, neither a search nor arrest warrant was necessary, and the waiver of Brito's right to testify before a grand jury was insufficient to support a claim of ineffective representation.  Opp'n Decl., Exh. I.  She also noted that Brito obtained and consulted with his new attorney before he pled guilty.  **Id**.  Brito did not appeal the decision.

### 3.     Error Coram Nobis Application

Brito also sought a writ of *error coram nobis*.  Opp'n Decl., Exh. J.  He claimed that his appellate counsel had been ineffective for failing to raise various issues on direct appeal.  **Id**.

Specifically, Brito claimed Dean had failed to raise the following issues: 1) Stoll's ineffectiveness based on his waiver of Brito's right to appear and testify before a grand jury; 2) the court's error in allowing Brito to plead guilty to charges in which evidence was obtained without a search or arrest warrant; and 3) Stoll's ineffectiveness for filing an incomplete suppression motion which lacked sworn factual allegations. **Id**. at 5. The Appellate Division, First Department, denied Brito's application on July 10, 2003. **People v. Brito**, 764 N.Y.S.2d. 59 (App. Div. 1st Dep't 2003). Brito did not request leave to appeal that ruling.

### 4. Habeas Petition

Brito initially filed a petition for a writ of habeas corpus on August 8, 2003. He claimed his sentence was excessive and should be reduced in the interest of justice. On March 8, 2004, Chief Judge Mukasey denied Brito's excessive sentence claim, but stayed the proceedings for sixty days to allow Brito to amend the petition. Brito filed an amended petition on March 29, 2004.

### III. DISCUSSION

### A. Threshold Issues

### 1. Timeliness

A petitioner must file an application for a writ of habeas corpus within one year of his conviction becoming final. *See* 28 U.S.C. § 2244(d)(1). A conviction becomes final "'when [the] time to seek direct review in the United States Supreme Court by writ of certiorari expire[s],'" that is, ninety days after the final determination by the state court. **Williams v. Artuz**, 237 F.3d 147, 151 (2d Cir. 2001) (*quoting* **Ross v. Artuz**, 150 F.3d 97, 98 (2d Cir. 1998)).

Brito's conviction became final on June 27, 2002, but the statute of limitations was tolled while his state motions were pending.  ***See*** 28 U.S.C. § 2244(d)(2); **Smith v. McGinnis**, 208 F.3d 13, 17 (2d Cir. 2000) (***per curiam***), ***cert. denied***, 531 U.S. 840 (2000).  Brito's motion to vacate the judgment was pending between November 16, 2002, and April 28, 2003, and his *coram nobis* application was pending between December 12, 2002, and July 10, 2003. Therefore, Brito's tolling began on November 16, 2002, after 141 days had passed since his conviction became final, and ended on July 10, 2003.  As of July 11, 2003, Brito had 224 days left on his one year statute of limitations.  The *Pro Se* Office in this District received Brito's first habeas petition on August 8, 2003.  On March 8, 2004, Judge Mukasey directed Brito to file an amended petition and stayed the proceedings for 60 days.  Brito's revised petition was received on March 29, 2004.  Thus, both the original and amended petitions were timely.

## 2.      Exhaustion

Pursuant to 28 U.S.C. § 2254(b), as amended by the Antiterrorism and Effective Death Penalty Act ("AEDPA"), the Court may not consider a petition for habeas corpus unless the petitioner has exhausted all state judicial remedies.  28 U.S.C. § 2254(b)(1)(A); **Picard v. Connor**, 404 U.S. 270, 275 (1971); **Dorsey v. Kelly**, 112 F.3d 50, 52 (2d Cir. 1997).  In order to satisfy substantive exhaustion, a petitioner's claim before the state courts must have been federal or constitutional in nature.  Although not an exacting standard, a petitioner must inform the state courts of  "'both the factual and the legal premises of the claim [he] asserts in federal court.'" **Jones v. Vacco**, 126 F.3d 408, 413 (2d Cir. 1997) (***quoting* Daye v. Attorney Gen.,** 696 F.2d 186, 191 (2d Cir. 1982) (***en banc***)).   A petitioner can meet this requirement by:

(a) reliance on pertinent federal cases employing constitutional analysis, (b)

reliance on state cases employing constitutional analysis in like fact situations, (c) assertion of the claim in terms so particular as to call to mind a specific right protected by the Constitution, [or] (d) allegation of a pattern of facts that is well within the mainstream of constitutional litigation.

**Daye**, 696 F.2d at 194.  Procedurally, the petitioner must utilize all avenues of appellate review within the state court system before proceeding to federal court.  ***See*** **Bossett v. Walker**, 41 F.3d 825, 828 (2d Cir. 1994).  He must raise a federal claim at each level of the state court system, "present[ing] the substance of his federal claims 'to the highest court of the pertinent state.'"  **Id**. (*quoting* **Pesina v. Johnson**, 913 F.2d 53, 54 (2d Cir. 1990)).  Brito has not presented any of the claims raised in his habeas petition to New York's highest court.  None of his current claims were raised on direct appeal.  To the extent his ineffective counsel claims were raised in the motion to vacate and in his writ of *error coram nobis*, both were denied and neither denial was appealed.  Therefore, none of Brito's claims have been exhausted, and I recommend that his petition be dismissed on this ground.

### 3.    Procedural Default

In addition to the constraints that the exhaustion requirement places on a petitioner's claim, "a petitioner who procedurally defaults on his state court remedies is barred from obtaining federal habeas relief[.]" **Jones**, 126 F.3d at 414 (*citing* **Ellman v. Davis**, 42 F.3d 144, 147 (2d Cir. 1994)); **Coleman v. Thompson**, 501 U.S. 722, 750 (1991).  By failing to meet the state's procedural requirements, he "has deprived the state courts of an opportunity to address those claims in the first instance." **Edwards v. Carpenter**, 529 U.S. 446, 451 (2000) (*quoting* **Coleman**, 501 U.S. at 732).  Federal habeas review is thus precluded where the petitioner fails to properly raise objections or fails to appeal to the state courts, unless the

petitioner "can demonstrate cause for the default and actual prejudice . . . or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice." **Coleman**, 501 U.S. at 750; *see also* **Harris v. Reed**, 489 U.S. 255, 258 (1989).  The Supreme Court has defined "cause" as a showing that "some objective factor external to the defense impeded counsel's efforts to raise the claim in the state court." **McCleskey v. Zant**, 499 U.S. 467, 493 (1991) (*citing* **Murray v. Carrier**, 477 U.S. 478, 488 (1986)).  The "fundamental miscarriage of justice" exception is available to a petitioner only if he can establish factual innocence.  **Dixon v. Miller**, 293 F.3d 74, 81 (2d Cir. 2002).  A petitioner can establish actual innocence by demonstrating that "it is more likely than not that no reasonable juror would have convicted him" in light of all the evidence.  **Bousley v. United States**, 523 U.S. 614, 623 (1998) (*quoting* **Schlup v. Delo**, 513 U.S. 298, 327 (1995)).

### a.    Procedurally Barred Claims

Brito's claims that (1) the government lacked jurisdiction over him; (2) the evidence was wrongfully obtained; (3) his bail and detention were unreasonable under the Eighth Amendment; (4) there were various violations of the Sixth Amendment during arraignment and grand jury proceedings; (5) his appellate counsel was ineffective; (6) his guilty plea was coerced; and (7) he was deprived the right to due process of law were not raised on direct appeal.  Since he was required to exhaust state remedies and fairly present the federal constitutional claims to the highest state court available before filing for a writ of habeas corpus, *see* 28 U.S.C. § 2254(b); *see also* **Daye v. Attorney General of the State of New York**, 696 F.2d 186, 191-192 (2d Cir. 1982), these claims are unexhausted.

These claims are also procedurally barred because New York law does not permit a

10

second direct appeal or a second leave request to the New York Court of Appeal.  *See* N.Y. Court Rules § 500.10(a).  Collateral review of the claim in the state court is similarly barred.  ***See*** New York Criminal Procedure Law § 440.10(2)(a), (c).  "[A] federal habeas court need not require that a federal claim be presented to a state court if it is clear that the state court would hold the claim procedurally barred."  <u>**Harris v. Reed**</u>, 489 U.S. 255, 263 n. 9 (1989). Brito has failed to show cause for not raising these claims in the state court, or the resulting prejudice, nor has he made a showing of factual innocence.  These claims can therefore be dismissed on the above grounds.

> **b.      Ineffective Assistance of Trial Counsel Claim**

Brito's claim that his trial counsel was ineffective is substantively unexhausted, but not procedurally barred.  Brito may raise this claim in a second motion to vacate pursuant to C.P.L. § 440.10.  However, since this Court has the power to deny unexhausted claims on the merits, Brito's claim of ineffective assistance of trial counsel is addressed below.

**B.      Merits of the Ineffective Assistance Claim**

**1.      Standard of Review**

AEDPA constrains a federal habeas court's ability to grant a state prisoner's application for a writ of habeas corpus with respect to claims adjudicated on the merits in state court.  The Act limits issuance of the writ to circumstances in which the state adjudication "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States."  28 U.S.C. § 2254(d)(1); *see* <u>**Williams v. Taylor**</u>, 529 U.S. 362, 412 (2000).  A state court decision is contrary to federal law if the state court applies "a conclusion opposite to that reached by [the Supreme] Court on a

question of law or if [it] decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." **Williams**, 529 U.S. at 413. Furthermore, in cases where the state court decision rests on a factual determination, the federal court must find that the "decision . . . was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2).

### 2. Analysis of Claim

"The benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." **Strickland v. Washington**, 466 U.S. 668, 686 (1984). To prevail on an ineffective assistance of counsel claim, a petitioner must show that his counsel supplied deficient representation and that he suffered prejudice as a result of that deficient performance. **Id**. at 687. Under the first prong, counsel is "strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." **Id**. at 690. "[T]he defendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" **Id**. at 689 (*quoting* **Michel v. Louisiana**, 350 U.S. 91, 101 (1955)). In this regard, "strategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable." **Id**. at 690. As to the second prong, the petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." **Id**. at 694. Although **Strickland** sets forth two prongs, a reviewing court need not address both. Instead, where the court can "dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice," the court should do so. **Id**. at 697.

In his motion to vacate the judgment, Brito claimed that his trial counsel, Stoll, was ineffective because (1) he waived his right, under state law, to appear before the grand jury; (2) failed to file a proper suppression motion which included a sworn affidavit; and (3) allowed him to enter a plea where there was no search or arrest warrant.  **Id**. at 12.  Opp'n Decl., Exh. G at 9, 12, 15.  The trial court found that Brito's "bare bones assertion" that his counsel had erred in waiving his right to appear before the grand jury did not make out a claim of ineffective assistance of counsel.  Opp'n Decl., Exh. I.  The court also found that Stoll had made proper pretrial motions and secured a **Huntley** hearing for Brito.  **Id**.  Finally, the court found that there was no error in connection with the guilty plea because no warrant was required.  **Id**.

First, as the trial court indicated, the claim based on Brito's right to appear before the grand jury fails.  While state law does provide a defendant with the right to testify on his own behalf, **see** C.P.L. § 190.50(5)(a), Brito does not demonstrate how the waiver of that right by his counsel constituted ineffective assistance.  Such "conclusory allegation[s] . . . fail[] to overcome the presumption that counsel acted reasonably."  **Matura v. United States**, 875 F. Supp. 235, 237 (S.D.N.Y. 1995).  Brito's claim that Stoll's suppression motion was inadequate fails for the same reason.  He has not provided any specific allegations about what facts an affidavit could have contained and how those facts would have led to a different result.  In any event, Brito was granted a **Huntley** hearing on the motion to suppress.  Therefore, he cannot establish prejudice because of any error by his counsel.  Also, Brito has set forth no facts indicating that, bur for errors by his counsel, he would have chosen not to enter a guilty plea.  **See Hill v. Lockhart**, 474 U.S. 52, 59 (1985).  Brito's claim regarding the warrant less search and arrest also fails.  While Brito insists that advising him to enter a guilty plea was error because there had been no warrants

in his case, the facts presented here indicate that a warrant was unecessary because Brito gave the officers consent to enter.  Brito has not provided any allegations to contest this, and has not shown that the trial court's decision denying his claim of ineffective assistance of trial counsel was an unreasonable application of federal law, and therefore, this claim should be **DENIED**.

### IV. CONCLUSION

Because none of the claims are exhausted, the petition should be **DISMISSED**.  Except for the claim of ineffective assistance of trial counsel, the claims are also procedurally barred.  The ineffective assistance claim, however, is meritless.  I therefore recommend that Brito's petition for a writ of habeas corpus be **DISMISSED**.  Pursuant to Rule 72, Federal Rules of Civil Procedure, the parties shall have ten (10) days after being served with a copy of the recommended disposition to file written objections to this Report and Recommendation.  Such objections shall be filed with the Clerk of the Court and served on all adversaries, with extra copies delivered to the chambers of the Honorable Laura T. Swain, 500 Pearl Street, Room 755, and to the chambers of the undersigned, Room 1970.  Failure to file timely objections shall constitute a waiver of those objections both in the District Court and on later appeal to the United States Court of Appeals.  *See* **Thomas v. Arn**, 474 U.S. 140, 150 (1985); **Small v. Sec'y of Health and Human Servs.**, 892 F.2d 15, 16 (2d Cir. 1989) (*per curiam*); 28 U.S.C. § 636(b)(1) (West Supp. 1995); Fed. R. Civ. P. 72, 6(a), 6(e).

**DATED: May 4, 2007**
**New York, New York**

14

**Respectfully Submitted,**

**The Honorable Ronald L. Ellis**
**United States Magistrate Judge**

**Copies of this Report and Recommendation were sent to:**

Petitioner, *pro se*
Amado Brito
01-R-0878
Shawangunk Correctional Facility
P.O. Box 700
Wallkill, NY 12589

Counsel for Respondent
Luke Martland
Federal Habeas Corpus Section
State of New York
Office of the Attorney General
120 Broadway
New York, NY 10271

15